UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DERRICK HILLMAN,** *et al.*, | : | Case No. 5:09-CV-2538 |
| Petitioners, | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| v. | : | |
| **MARGARET BEIGHTLER,** | : | **MEMORANDUM AND ORDER** |
| Respondent. | : | |

Before the Court is a joint petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and a Motion to Dismiss that petition (Doc. 6). Also pending is a Report and Recommendation ("R&R") regarding that Motion to Dismiss (Doc. 9). Although the petitioners, Derrick Hillman and Dallas Hillman (collectively, the "Hillmans") have, through counsel, filed a document captioned "[o]bjections" to the R&R (Doc. 10), that document is not a proper objection.

Accordingly, as explained more fully below, the Hillmans have forfeited their right to further review of the Motion to Dismiss, which is **GRANTED**. The Hillmans' petition is **DENIED** and their case is **DISMISSED**.

**FACTUAL BACKGROUND**

The facts of this case were summarized by the Ohio Court of Appeals for the Ninth District:

On November 15, 2004, Senior Agent Charles Ellis of the Medway Drug Enforcement Agency ("Medway") received information from a confidential informant that Dallas Hillman and another black male would be arriving in Wooster around 1:00 p.m. that day driving a black Lincoln Navigator. According to the informant, the two men would be transporting crack cocaine from Cleveland to sell in Wooster. The informant gave Agent Ellis an address of a residence where the two men were going to be dropping off the drugs. Agent Ellis recognized the address as the residence of Michael Hall. Agent Ellis knew that Hall had previously been convicted of drug trafficking. Based on his past experience with this informant and the fact that Medway had worked successfully with

this particular informant on multiple occasions in recovering contraband, Agent Ellis considered him to be reliable.

Agent Ellis contacted the Wooster Police Department for assistance. Wooster Police put the residence under surveillance. Around 1:00 p.m., the informant contacted Agent Ellis to let him know that the two men would be arriving approximately one-half hour to one hour late. Around the time the two men were to arrive, Wooster Police observed a black Lincoln Navigator with two black males inside approaching Wooster. The police ran the plate, and the registration belonged to a resident of Cleveland. The police followed the vehicle to Hall's residence and pulled it over. Derrick Hillman was driving the vehicle and Dallas Hillman was in the passenger seat. The police explained to the men that they had received a tip that they were transporting drugs into the area for sale. The two [m]en complied with the officer's request that they exit the vehicle. Upon exiting the vehicle, the Hillmans were searched. When asked, the two men stated that there were no drugs in the vehicle.

Agent Ellis asked Derrick Hillman for consent to search the vehicle for drugs; Derrick consented to the search. Derrick and Dallas were questioned separately regarding their reason for being in the area and they gave conflicting stories about why they were there -- one said it was to go shopping and the other answered that they were there to meet a guy to build something.

During the initial consent search of the vehicle, Officer Brian Waddell, a member of the City of Wooster's canine unit, was contacted to bring his drug dog to search the vehicle. No drugs were found in the vehicle by the officers, but the dog became more aggressive walking around the outside of the vehicle and alerted on an inside panel of the vehicle. Officer Waddell indicated that because the dog did not have a strong reaction, the drugs may not be in the car but they were probably with the passengers. Because of the dog's alert on the vehicle, the police searched it again.

During the second search of the vehicle, approximately 15 to 30 minutes after the initial stop, Agent Ellis spoke with the confidential informant who had paged him. The informant told Agent Ellis that if the drugs were not in the vehicle, the two men usually kept the packages taped to their testicles.

At some point during these events, Michael Hall approached one of the police cruisers to speak with Dallas. Agent Ellis testified that the police knew Hall to be involved in drug trafficking in the area. According to the confidential informant, Hall's residence was the Hillmans' destination with the drugs.

Based upon the information from the informant, the conflicting stories from Dallas and Derrick, the drug dog alert on the vehicle, and Hall asking to speak with Dallas, Agent Ellis asked the Hillmans to go to the Wayne County Justice Center for a strip search; they agreed to go.

When they arrived at the Justice Center, the Hillmans initially stated that they would not consent to a strip search and said they would fight the officers. The Hillmans finally agreed to the strip search and Dallas was searched first: After Dallas removed his clothes,

> Agent Ellis looked over Dallas. Agent Ellis asked him to squat down and he replied that he had a problem with his genitals. Agent Ellis then saw a clear plastic baggie sticking out from under Dallas' testicles. Agent Ellis asked Dallas to give him the baggie. Dallas attempted to get away and Agent Ellis reached down and grabbed the baggie.
>
> Derrick was then brought into the interview room to be searched. Upon seeing the bag of crack on the table, Derrick removed his clothes and the officers recovered two bags of crack, one small bag and a larger bag hidden under his testicles. The Hillmans were then placed under arrest for possession of drugs and conveyance of drugs onto the grounds of a detention facility.
>
> From the time of the initial stop until the drugs were seized, approximately one hour and twelve minutes elapsed.
>
> The Hillmans were each indicted by the Wayne County Grand Jury on one count of possession of crack cocaine, a violation of R.C. 2925.11. The Hillmans initially pled not guilty and filed a motion to suppress any and all evidence seized as a result of their stop, detention, arrest, and search. A hearing on the Hillmans' motion to suppress was held on April 25 and May 9, 2006, during which Agent Ellis testified concerning the reliability of the confidential informant. The trial court denied the motion to suppress. The Hillmans subsequently withdrew their pleas of not guilty and entered pleas of no contest. The trial court accepted the Hillmans' no contest pleas . . . and sentenced them accordingly.

*State v. Hillman*, 2008 Ohio 3204, ¶¶1-11 (Ohio Ct. App. June 30, 2008).

## PROCEDURAL HISTORY

On June 30, 2008, the Hillmans appealed their conviction to the Ohio Court of Appeals for the Ninth District. *See generally id*. They asserted a single assignment of error:

> THE TRIAL COURT ERRED IN DENYING THE APPELLANTS' MOTION TO SUPPRESS AS THE EVIDENCE WAS UNLAWFULLY FOUND IN VIOLATION OF THE FOURTH AMENDMENT.

*Id*. at ¶12. The Ninth District affirmed the trial court, reasoning: (1) that the police had reasonable suspicion to stop the Hillmans based on specific testimony from a previously known and reliable informant, *see id*. at ¶¶ 8-9, (2) that the drug dog's search did not unreasonably lengthen the Hillman's detention, *see id*. at ¶¶ 10-26, (3) that the Hillmans' continued detention did not amount to their being placed in custody, *see id*. at ¶¶ 27-30, and (4) that the Hillmans' consented to the strip search, obviating the need for a warrant, *see id*. at ¶ 31.

3

On October 29, 2008, the Supreme Court of Ohio declined to hear the Hillmans' appeal.  *See State v. Hillman*, 119 Ohio St. 3d 1505 (Ohio 2008).  On March 23, 2009, the Supreme Court of the United States denied the Hillmans' petition for a writ of certiorari.  *See Hillman v. Ohio*, 129 S. Ct. 1630 (2009).

On October 29, 2009, the Hillmans filed a joint petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  This petition asserted two grounds for error:

> GROUND ONE: The appellant's Derrick Hillman's and Dallas Hillman's rights to be free from unreasonable searches and seizures under the United States Constitution were violated when the trial court erroneously denied the Hillmans' motion to suppress unlawfully obtained evidence.
>
> GROUND TWO: Where the validity of a search rests on consent, the prosecution must show any consent

(R&R at 2) (citations omitted).

On November 20, 2009, the Court referred this case to Magistrate Judge James S. Gallas ("Judge Gallas"), ultimately for preparation of a Report and Recommendation ("R&R") regarding the Hillmans' petition.

On March 22, 2010, the Hillmans filed a Response/Traverse.  (Doc. 7.)

On April 19, 2010, Judge Gallas issued his R&R recommending that this Court grant the Respondent's motion and dismiss this case.  (Doc. 9.)  On May 3, 2010, the Hillmans filed a document captioned "Objections to the Magistrate's Report and Recommendation."  (Doc. 10.)  This document does not cite the R&R, nor make any particular reference to any of the conclusions reached in the R&R.  (*See id.*)  The document, rather, is a copy of the brief filed before Judge Gallas.  (*Compare* Doc. 7 *with* Doc. 10.)[1]

---

[1] The Respondents' counsel did remove a paragraph of the brief presented to Judge Gallas prior to filing that brief with this Court.  (*Compare* Doc. 7 at 6 *with* Doc. 10 at 5.)

4

## DISCUSSION

**A. The Hillmans Have Waived Their Right to Review**

In cases that are referred to a magistrate judge for preparation of an R&R, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *McClendon v. Challenge Fin. Investors Corp.*, No. 08-1189, 2009 U.S. Dist. LEXIS 17908, at *6-7 (N.D. Ohio Mar. 9, 2009) (quoting 28 U.S.C. § 636(b)(1)(C)). A court is only required to conduct a *de novo* review of the portions of an R&R to which the parties have made an objection, and the parties have a "duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Cincinnati Ins. Co. v. Grand Pointe, LLC*, 501 F. Supp. 2d 1145, 1153 (E.D. Tenn. 2007) (quoting *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. Ohio 1986)). In the absence of specific objections, a court may adopt conclusions reached by the Magistrate Judge without discussion. *See Thomas v. Arn*, 474 U.S. 140, 149-52, (1985); *Crum v. Sullivan*, 921 F.2d 642, 645 n.1 (6th Cir. 1990).

The brief in this case falls far short of the "duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Cincinnati Ins. Co.*, 501 F. Supp. 2d at 1153 (quotation omitted). To the contrary, it is not possible to characterize this brief as responding to the R&R, given that it is a carbon copy of the brief presented to Judge Gallas. The Hillmans, though counsel, are essentially defeating the purpose of the referral in the first instance:

> While a district judge plainly has authority to go back through the record to determine whether a report and recommendation[] should be adopted, that approach would undermine the purpose of the Magistrate's Act to provide assistance of subordinate judicial officers to Article III judges. If an Article III judge must repeat the process in which the magistrate judge engaged, instead of being directed to specific objections, what use is the reference?

*Gonzales v. Wolfe*, No. 1:04cv208, 2006 U.S. Dist. LEXIS 73370, at *3-4 (S.D. Ohio July 5, 2006), *adopted*, 2006 U.S. Dist. LEXIS 69073 (S.D. Ohio, Sept. 26, 2006), *aff'd*, 290 Fed. Appx. 799 (6th Cir. 2008); *cf. Gonzales*, 290 Fed. Appx. at 814 (accepting the unremarkable argument that a district court, rather than a Magistrate Judge, must ultimately review properly raised objections).

5

Put simply, the Hillmans have not preserved the right to further review.  *See Thomas*, 474 U.S. at 149-52; *Crum*, 921 F.2d at 645 n.1; *Gonzales*, 2006 U.S. Dist. LEXIS 73370, at *3-4.  Accordingly, Respondent Margaret Beightler's Motion to Dismiss is **GRANTED**.

**B. The Hillmans' Petition Would Not Have Been Well-Taken**

Even if the Hillmans had not waived their right to review, however, the Court could not have granted the Hillmans the relief that they seek.  Although this Court would not necessarily have reached all of the same conclusions as the state courts, that is of no moment: a federal habeas court lacks the power to review a state trial court's denial of a motion to suppress absent particular circumstances that are neither alleged nor, as far as the Court can tell, present.  *See Stone v. Powell*, 428 U.S. 465, 494 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief."); *Harding v. Russell*, 156 Fed. Appx. 740, 745 (6th Cir. 2005) ("Because the State of Ohio provided a full and fair opportunity for Harding to litigate his Fourth Amendment claim, we conclude that claim is not cognizable on habeas review.").

The Sixth Circuit has explained that a federal habeas court's inquiry under *Stone* takes the form of a two-step process:

> [A] district court [must] make two distinct inquiries in habeas proceedings.  Initially, the district court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim.  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (citations omitted).  The Sixth Circuit has further explained that a federal habeas court sitting in Ohio need undertake only the second step of this review, because "[t]he mechanism provided by the State of Ohio for the resolution of fourth amendment claims is, in the abstract, clearly adequate."  *Id*.; *see also Gulley v. Hall*, Case No. 5:09-CV-00441, 2010 U.S.

6

Dist. LEXIS 35004, at *18-19 (N.D. Ohio Mar. 22, 2010), *adopted*, 2010 U.S. Dist. LEXIS 35007 (N.D. Ohio Apr. 9, 2010).

The Hillmans do not allege any particular failure of Ohio's mechanism for review. (*See generally* Docs. 1, 7, 10.) Rather, as explained by Judge Gallas, they "simply disagree with the unfavorable analysis and outcome in the state courts . . . ." (R&R at 3.) The Court, too, does not see any obvious failure of Ohio's mechanism from the face of the record. *See Cabrera v. Hinsley*, 324 F.3d 527, 531-32 (7th Cir. 2003) ("Absent a subversion of the hearing process, we will not examine whether the judge got the decision right. . . . 'full and fair' guarantees the right to present one's case, but it does not guarantee a correct result."). The Hillmans filed a motion to suppress that was considered by the state trial court, and the Ninth District Court of Appeals issued a fairly detailed opinion affirming that court. *See generally Hillman*, 2008 Ohio 3204. In short, because the Hillmans "made full use of Ohio's procedural mechanism that permits a defendant to raise Fourth Amendment claims pretrial and to appeal unfavorable decisions," they do not have a cognizable claim for review. *Gulley*, 2010 U.S. Dist. LEXIS 35004, at *19 (citation omitted).

## **CONCLUSION**

For the foregoing reasons, this Court **ADOPTS** the R&R (Doc. 9), **GRANTS** the Respondent's Motion to Dismiss (Doc. 6), and **DENIES** the Hillmans' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc 1). Accordingly, the Hillmans' case is **DISMISSED**.

The court certifies, pursuant to 28 USC 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis on which to issue a certificate of appealability. 28 USC 2253; Fed.R.App.P. 22(b).

7

**IT IS SO ORDERED.**

<u>s/Kathleen M. O'Malley</u>
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: May 26, 2010**